166 So.2d 872

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**

v.

**Phillip HANNA et al.**

5 Div. 772.

Supreme Court of Alabama.

March 26, 1964.

Rehearing Denied Aug. 27, 1964.

Sam W. Oliver, Dadeville, Rives, Peterson, Pettus & Conway, Birmingham, for appellant.

Chas. R. Adair, Jr., and Ruth S. Sullivan, Dadeville, Wm. I. Byrd, Alexander City, for appellees.

HARWOOD, Justice.

This is an appeal from a decree entered in a declaratory judgment action. The bill prayed for a determination of the rights of the parties under an automobile insurance policy.

It alleged that a damage suit for personal injuries had been filed by Jimmie Hanna against his son Phillip, who was the insured. It further alleged that the injury to Jimmie Hanna, on 4 November 1961, resulted from the negligence of Phillip in the operation of an automobile.

The insurer, State Farm, had been called upon to defend the suit under a liability insurance policy issued by it to Phillip. State Farm thereupon filed the bill below and asserted that it was not obligated to defend the suit nor to pay any judgment rendered thereon on grounds that, (1) the alleged accident was not covered by the policy because of a family exclusion provision and, (2) the respondent, Phillip Hanna, had breached the cooperation clause of the policy, a condition precedent to liability by State Farm under the policy.

The family exclusion provision in the policy excludes coverage to:

"Bodily injury to the insured or any member of the family of the insured residing in the same household as the insured."

The assistance and cooperation of the insured provision in the policy reads:

"The insured shall cooperate with the company."

In their separate answers the respondents denied that Jimmie Hanna was a member of the family of the insured, Phillip Hanna, residing in the same household, and further denied that the insured had failed to cooperate with State Farm as required by the policy.

After a hearing, the court rendered a decree adverse to State Farm, and in favor of the respondents, holding that State Farm was obligated to defend the action at law instituted by Jimmie Hanna against his son Phillip Hanna, the insured, and was obligated to pay any judgment that might be rendered therein. The court further found that non-cooperation on the part of the insured that would prejudice the complainant was not sufficiently established.

From this decree State Farm has perfected its appeal.

The appellant has argued three points: (1) that the court erred in decreeing that State Farm was obligated to defend the insured, Phillip Hanna, in the suit brought by his father, and to pay any judgment rendered thereon against Phillip Hanna, (2) that the court erred in finding that the coverage, if any, was not voided by the insured's breach of the cooperation clause, and (3) in considering evidence which was illegal, immaterial, and irrelevant in reaching its conclusions and its decree.

The evidence presented by the complainant shows that at the time of the accident on 4 November 1961, the insured, Phillip Hanna, was 20 years of age, and was in his third year as a student in Howard College in Birmingham, Alabama. At the college he lived in a dormitory room with a roommate, with the usual furnishings of a dormitory room.

It cost Phillip approximately $800.00 per college year to attend college, his tuition being reduced by half because he was a ministerial student. These expenses were paid in part by Phillip and in part by his parents who were domiciled in East Tallassee, Alabama. Prior to entering college Phillip had accumulated $1,000 to $1,500 which was deposited in a savings account in a bank in Tallassee. During the summer vacations he had earned $300 to $500 in summer jobs, and while in college he had preached six or eight times a year and had been paid about $15 each time. He drew upon his monies from time to time while in college, and part of his expenses were paid by his parents. Upon registering for the draft in Tallapoosa County, he gave his address as that of his parents in East Tallassee. Subsequent notices of classification by the draft board have been sent to that address, the last such notice being dated 12 January 1961. He never changed his address with the draft board.

During the summer vacation each year, Phillip returned to the home of his parents in East Tallassee, and also returned there for the Thanksgiving, Christmas, and Spring holidays. He also would return for weekend visits from time to time.

Phillip had a room in the family home in East Tallassee which was known as his room, and which had been his room while in high school. He was an only child and he and his parents were the only people who had lived in the home. While away at college some of his possessions remained in this room.

Just before Christmas of 1960, he applied for the policy of insurance involved in this case. At that time he was a student at Howard College. The license tags for the automobile purchased in late 1961 were bought in Tallapoosa County and Phillip gave his address as East Tallassee, Alabama.

Phillip did not pay room rent or board when he went to the family home on weekends, but from time to time during the summer vacations he would buy and contribute groceries. He maintains a charge account in a drug store in East Tallassee where his address is listed as the family home. His drivers' license shows his address as being at the family home. The present insurance policy and other papers belonging to Phillip remain in the family home. On the other hand, his college library card listed his address as Room 213, Howard College. When he purchased the insurance policy here involved, he told Mr. Thompson, the State Farm agent, he had been living in Birmingham at school.

Mr. Thompson testified that he had told Mr. Jimmie Hanna that the two conditions to issuing the policy to Phillip were that a State Farm policy must be in force in his immediate household insuring a car owned by a member of the household and secondly, that the minor owner of a car had to be a resident or member of the household. When the policy was actually applied for on 26 December 1960, he again discussed these conditions in the presence of both Mr. Hanna and Phillip. He told Phillip he was qualified under both conditions,

though Mr. Thompson at that time knew that Phillip was a student in Birmingham and would take the car to Birmingham when he returned to school. Notwithstanding, Mr. Thompson considered Phillip a member of the household in Tallassee.

The accident in which Mr. Hanna was injured occurred on 4 November 1961, while Phillip had his automobile in the yard of his parent's home, he being on a weekend visit to them.

On 10 February 1962, Mrs. Hanna, at the request of Mr. Hanna's attorney, got in touch with Phillip at Howard College and requested him to pick up papers pertaining to a suit filed by his father against him, and to take such papers to Dadeville for filing. Phillip did as he was requested, picking up the papers at the office of his father's attorney, and called his mother from Dadeville telling her that he had been served, and that she should notify Mr. Thompson. This, of course, was after he had taken the suit papers from the attorney's office in Alexander City to Dadeville, Alabama, where he handed them to the clerk of the Circuit Court. He also filed a paper for the appointment of a guardian ad litem to represent him in the suit. In Dadeville a copy of the suit papers was handed to the deputy sheriff by an employee in the circuit clerk's office, who in turn served the copy on Phillip. He then returned to school and did nothing with respect to the papers until his mother called him about two and a half weeks later and told him that Mr. Thompson, the State Farm agent, needed the papers. Phillip mailed them to his mother.

Phillip testified that he in no wise discussed the suit with Mr. Hanna's attorney, but merely picked up the papers and took them to Dadeville as instructed.

Mr. Thompson testified he received these papers on 6 March. He further testified that he visited Jimmie Hanna with a claims adjuster some time after 5 November 1961, and prior to 10 February 1962, but he could not recall what was said or done on that occasion regarding the injury to Mr. Hanna.

Mr. Charles Funderbuck testified that Phillip had worked in his drug store in the afternoons while in school, and full time during the summers. Phillip terminated this employment after telling Mr. Funderbuck that he was going to college in Birmingham.

Miss Jenny Ruth Gann, clerk of the East Tallassee Baptist Church, testified in substance that Phillip Hanna moved his church membership back and forth between East Tallassee and Birmingham depending on whether he was in school or at home for the summer. A copy of the "Church Covenant" was received in evidence and it showed that members of the church agreed that "when we remove from this place we will as soon as possible unite with some other church where we can carry out the spirit of the Covenant."

The first point to be determined is, were Jimmie Hanna and Phillip residing in the same household at the time of the accident?

In brief counsel for appellant argue that the provision excluding coverage for "bodily injury to the insured or any member of the family of the insured residing in the same household as the insured" is plain, unambiguous, and susceptible of only one reasonable construction, and does not permit of a construction favorable to the insured. Counsel further asserts that the doctrines of Holloway v. State Farm Mutual Automobile Ins. Co., 275 Ala. 41, 151 So.2d 774, and Home Ins. Co. v. Pettit, 225 Ala. 487, 143 So. 839, are decisive of the point now being considered. We do not agree with either premise.

Holloway, supra, concerned the concept to be accorded the word "family" as it appears in the provision now under consideration.

Pettit, supra, dealt with the meaning of the word "household" in an exclusionary clause then being considered.

Neither case was concerned with the interpretation of the phrase "residing in the same household."

■■ The word "residing" is an ambiguous, elastic, or relative term, and includes a very temporary, as well as a permanent, abode. Phillips v. South Carolina Tax Comm., 195 S.C. 472, 12 S.E.2d 13. It means a dwelling place for the time being, as distinguished from a mere temporary locality of existence. Drew v. Drew, 37 Me. 389. It indicates some intent of permanency of occupation as distinguished from boarding or lodging, but does not require the intent of permanency to the degree required in domicile. 2 Kent's Comm. (10th Ed.) 576. While residence is a necessary component of domicile, residence is not always domicile. One may have a legal domicile with his family, and reside actually and personally away from his family. In such event the word "reside" may correctly denote either the technical domicile, or the actual personal residence. The word "reside" is often used to express a different meaning according to the subject matter. In re Seidel, 204 Minn. 357, 283 N.W. 742.

■■ We think it common knowledge that usually a student in a college or university must be "in residence" at the college or university for the academic year preceding the award of his degree. Often the statement is found that a student, or a faculty member is "in residence" at a college or university during a particular time. Phillip Hanna was living in a college dormitory at Howard College, and taking his meals at the college dining hall. Thus in this sense, Phillip Hanna was "in residence," or residing at Howard College at the time of the accident.

Nor was such residence abrogated by casual visits over the weekend to the home of his parents. Such visits were nothing more than mere temporary interruptions of his more permanent residence at Howard College. The same would apply to the Christmas and Spring vacation periods. We doubt that such rule should apply to the long summer vacation period of several months where a student resumes living with his parents, nor should such rules apply where a student attends a college or university in the same town or city as his home while he continues to reside in his family home.

■ The rule is too well settled by our decisions to require citation of authority that where provisions of an insurance policy are susceptible of plural constructions, consistent with the object of the obligation, that construction will be adopted which is favorable to the insured.

■ We hold that the court did not err in concluding that Phillip Hanna was not residing in the same household as Jimmie Hanna at the time of the accident.

Appellant's assignment of error No. 9, asserts error because the court, in its decree stated: "I do not see any element of non-cooperation to any extent that would prejudice the insurer."

The clauses of the policy pertinent to this aspect of the case read:

* * *

"2. *Action Against Company.* No action shall lie against the company: (a) Unless as a condition precedent thereto there shall have been full compliance with all terms of this policy.

* * *

"3. *Assistance and Cooperation of the Insured.* The insured shall cooperate with the company and upon its request, attend hearings and trials, assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of any legal proceedings in connection with the subject of this insurance."

Counsel for appellant relies upon American Fire and Cas. Co. v. Tankersley, 270

Ala. 126, 116 So.2d 579. This case concerned the failure of the insured to give the insurer notice of an accident, or receipt of any demand, summons, or other process, and held that such failure will release the insurer from obligation under the insurance contract, although no prejudice resulted, where such notices are specifically made a condition precedent to any action against the insurer.

■ The evidence below as to non-cooperation was merely to the effect that Phillip, at his mother's direction, had picked up certain suit papers at the office of his father's attorney and taken them to Dadeville where he filed them in the office of the circuit clerk, and was there served by a deputy sheriff with the summons and complaint. Phillip testified he did not discuss the suit in any wise with the attorney. Insofar as disclosed, his act in conveying the papers was that of a messenger or courier. The fact that he was served with the papers in no wise affected the substantial rights of the insurer, since serving could easily have been perfected by other methods.

There was no evidence tending to show that Phillip had ever been requested by the insurer to do any of the things set forth in the cooperation clause.

■ Cooperation implies assistance, and failure to cooperate cannot be implied where no assistance has been requested. American Surety Co. v. Sutherland, D.C., 35 F.Supp. 353.

■ Lack of cooperation being an affirmative defense, the burden was upon the insurer to establish such defense. United States Fidelity and Guaranty Co. v. Remond, 221 Ala. 349, 129 So. 15. What constitutes a failure of cooperation by an insured is usually a question of fact. Metropolitan Cas. Ins. Co. of New York v. Blue, 219 Ala. 37, 121 So. 25. The trial court, as trier of fact, and after hearing the witnesses, found no substantial lack of cooperation on the part of Phillip, the insured. What constituted a cooperation, or a material failure in that regard was a question of fact passed upon by him. We find no justifiable basis for disturbing his conclusion in this regard.

■ Counsel for appellant also argues, under appropriate assignment, that the decree is erroneous in that, because of certain statements there, it must be concluded that the court considered illegal, immaterial, and irrelevant testimony. These statements related to testimony by Phillip as to his intent to make Birmingham his place of residence. No objections were interposed to this evidence. See Section 372(1), Title 7, Code of Alabama 1940. Such evidence is not admissible under our decisions because of the so-called Rule of Exclusion prevailing in this State. See Conrad v. Conrad, 275 Ala. 202, 153 So.2d 635, and cases cited in concurring opinion.

However, there is legal, material, and relevant evidence fully supporting the judgment and decree below.

■ In equity cases, this court, in its review, will consider only such evidence as is legal, material and competent. Section 372(1), supra; Mink v. Whitfield, 218 Ala. 334, 118 So. 559. After full consideration, we are clear to the conclusion that the decree is supported by such type of evidence.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.